

**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF VIRGINIA**
Newport News Division

ANTHONY ECHEVARRIA,

        Petitioner,

v.

                              Criminal Case No. 4:07cr172
                              Civil Case No. 4:13cv96

UNITED STATES OF AMERICA,

        Respondent.

## OPINION AND ORDER

This matter is before the Court on two motions filed by Petitioner Anthony Echevarria ("Petitioner"). The Court considers Petitioner's Motion to Vacate, Set Aside, or Correct Sentence, filed pursuant to 28 U.S.C. § 2255, in which Petitioner asserts he is "actually innocent" of the crime to which he pled guilty. Pet'r's § 2255 Mot. at 5, ECF No. 36. The Court also considers Petitioner's "Combined Motions" seeking leave to supplement his response to the Government's opposition brief and requesting "Summary Judgment," or alternatively, an Evidentiary Hearing. Pet'r's Combined Mots. at 1, ECF No. 42. For the reasons discussed below, Petitioner's motions are **DENIED**.

## I.   FACTUAL AND PROCEDURAL BACKGROUND

On April 9, 2008, pursuant to a written plea agreement, Petitioner pled guilty to Counts One and Two of the Indictment in this case.   Count One charged Petitioner with Attempt to Obstruct, Delay, and Affect Commerce by Robbery, in violation of 18 U.S.C. § 1951(a).   Count Two charged Petitioner with Use, Carry, and Possess a Firearm During and in Relation to and in Furtherance of a Crime of Violence, in violation of 18 U.S.C. § 924(c)(1)(A).

According to the Statement of Facts, on May 9, 2007, Petitioner exited a maroon SUV "in the area of 21st Street and Jefferson Avenue in the City of Newport News," armed with a black revolver.   Statement of Facts ¶¶ 2-3, ECF No. 18. Petitioner pointed the revolver at the victim, a "known heroin trafficker in the City of Newport News," and asked the victim, "where the drugs at?"   Id. ¶¶ 1, 3.   When the victim responded that the "drugs took off running," Petitioner, "continu[ing] to hold [the victim] at gunpoint," took approximately $100 from the victim's pocket, and "then departed in his maroon SUV."   Id. ¶ 3.   The victim reported the robbery to the police, "provided detailed descriptions of [Petitioner] and his vehicle," and "identified [Petitioner's] photo from a photospread as the individual who robbed him."   Id. ¶ 4.   A search of Petitioner's residence revealed "a black . . . revolver," and "seventy-five

2

(75) rounds of .44 caliber ammunition." Id. ¶ 5. While at the Newport News City Jail, Petitioner "made several phone calls on jail telephones . . ., during which he discussed his robbery of [the victim] and the black revolver recovered from his bedroom." Id. ¶ 6.

Pursuant to the plea agreement, the Government agreed to dismiss Count Three of the Indictment against Petitioner, Plea Agreement ¶ 11, ECF No. 17 (sealed), charging Petitioner with Felon in Possession of a Firearm and Ammunition, in violation of 18 U.S.C. §§ 922(g)(1) and 924(a)(2), Indictment at 3, ECF No. 1. On April 9, 2008, the Court accepted Petitioner's guilty plea and on September 11, 2008, sentenced Petitioner to fifty-one (51) months of imprisonment on Count One and eighty-four (84) months of imprisonment on Count Two, to be served consecutively with Count One.

Petitioner filed his § 2255 motion and supporting memorandum on July 12, 2013. ECF Nos. 36, 37. The Government filed its response on July 31, 2013. ECF No. 40. Petitioner filed his reply brief on August 23, 2013. ECF No. 41. On September 10, 2013, Petitioner filed his "Combined Motions." ECF No. 42. Accordingly, this matter is ripe for review.

## II. STANDARD OF REVIEW

A federal prisoner, in custody, may collaterally attack his sentence or conviction by moving the district court "to vacate,

3

set aside or correct the sentence." 28 U.S.C. § 2255. To obtain such relief, a petitioner bears the burden of proving that his sentence or conviction was "imposed in violation of the Constitution or laws of the United States," that the district court "was without jurisdiction to impose such sentence," that the sentence exceeds "the maximum authorized by law," or that the sentence or conviction is "otherwise subject to collateral attack." 28 U.S.C. § 2255(a). A petitioner must prove the asserted grounds for relief by a preponderance of the evidence. Miller v. United States, 261 F.2d 546, 547 (4th Cir. 1958). Because a § 2255 motion "is ordinarily presented to the judge who presided at the original conviction and sentencing . . . the judge's recollection of the events at issue may enable him summarily to dismiss a § 2255 motion." Blackledge v. Allison, 431 U.S. 63, 74 n.4 (1977).

A § 2255 motion is, in essence, a statutory federal habeas corpus action that collaterally attacks a sentence or conviction through the filing of a new proceeding, as contrasted with a direct appeal. See In re Jones, 226 F.3d 328, 332-33 (4th Cir. 2000) ("'[Section] 2255 was intended to afford federal prisoners a remedy identical in scope to federal habeas corpus.'" (quoting Davis v. United States, 417 U.S. 333, 343 (1974))). The existence of the right to pursue a collateral attack does not displace a direct appeal as the "usual and customary method of

4

correcting trial errors." United States v. Allgood, 48 F. Supp. 2d 554, 558 (E.D. Va. 1999). On the contrary, with limited exceptions, a petitioner advancing new claims asserted for the first time in a § 2255 motion "must clear a significantly higher hurdle than would exist on direct appeal." United States v. Frady, 456 U.S. 152, 166 (1981). Accordingly, a § 2255 collateral challenge "may not do service for an appeal." Id. at 165.

The "higher hurdle" that applies to claims advanced for the first time in a § 2255 action exists because, once a defendant's opportunity to pursue a direct appeal has been waived or exhausted, there is "a final judgment [that] commands respect." Id. at 164-65. Accordingly, the doctrine of procedural default generally prevents a district court from reaching the merits of § 2255 claims that were not raised on direct appeal unless a petitioner can show: (1) "cause" excusing the failure to directly appeal such alleged errors; and (2) "actual prejudice resulting from the errors of which he complains." United States v. Mikalajunas, 186 F.3d 490, 492-93 (4th Cir. 1992). "'The existence of cause for a procedural default must turn on something external to the defense, such as the novelty of the claim, or a denial of effective assistance of counsel.'" United States v. Pettiford, 612 F.3d 270, 280 (4th Cir. 2010) (quoting Mikalajunas, 186 F.3d at 493). As for prejudice, it is not

enough for a petitioner to demonstrate "a <u>possibility</u> of prejudice," but rather, he must show that errors "worked to his <u>actual</u> and substantial disadvantage, infecting his entire [case] with error of constitutional dimensions." <u>Frady</u>, 456 U.S. at 170.

Alternatively, a petitioner may overcome the procedural default bar in limited circumstances by demonstrating that "a miscarriage of justice would result from the refusal of the court to entertain the collateral attack," such as where a petitioner can demonstrate actual innocence. <u>Mikalajunas</u>, 186 F.3d at 494. Actual innocence, however, "means factual innocence, not mere legal insufficiency" of a conviction. <u>Bousley v. United States</u>, 523 U.S. 614, 623-24 (1998); <u>see</u> <u>Mikalajunas</u>, 186 F.3d at 494 (indicating that a petitioner must demonstrate "actual factual innocence"). A petitioner "asserting innocence as a gateway to defaulted claims must establish that, in light of new evidence, 'it is more likely than not that no reasonable juror would have found petitioner guilty beyond a reasonable doubt.'" <u>House v. Bell</u>, 547 U.S. 518, 536-37 (2006) (quoting <u>Schlup v. Delo</u>, 513 U.S. 298, 327 (1995)). "A federal court faced with allegations of actual innocence, whether of the sentence or of the crime charged, must first address all nondefaulted claims for comparable relief and

other grounds for cause to excuse the procedural default." Dretke v. Haley, 541 U.S. 386, 393-94 (2004).

A § 2255 petitioner need not, however, overcome the procedural default bar to advance a freestanding claim of ineffective assistance of counsel, which is properly asserted for the first time in a § 2255 motion. See United States v. King, 119 F.3d 290, 295 (4th Cir. 1997) ("[I]t is well settled that 'a claim of ineffective assistance should be raised in a 28 U.S.C. § 2255 motion in the district court rather than on direct appeal, unless the record conclusively shows ineffective assistance.'" (quoting United States v. Williams, 977 F.2d 866, 871 (4th Cir. 1992))). Such rule exists because the Federal Rules Governing § 2255 Proceedings permit expansion of the record, which is generally unavailable on direct appeal and often necessary to properly resolve an ineffective assistance claim. United States v. Baptiste, 596 F.3d 214, 216 n.1 (4th Cir. 2010); see United States v. Allen, 491 F.3d 178, 191 (4th Cir. 2007) (indicating that ineffective assistance of counsel claims "are normally raised before the district court via 28 U.S.C. § 2255").

The Sixth Amendment to the Constitution of the United States provides that "the accused shall enjoy the right . . . to have the Assistance of Counsel for his defence." U.S. Const. amend. VI. The Supreme Court of the United States has

interpreted the right to counsel as providing a defendant "'the right to the effective assistance of counsel.'" Strickland v. Washington, 466 U.S. 668, 686 (1984) (quoting McMann v. Richardson, 397 U.S. 759, 771 n.14 (1970)) (emphasis added). To obtain relief based on an allegation of ineffective assistance a petitioner must establish both that: (1) counsel's performance fell below an objective standard of reasonableness; and (2) counsel's inadequate performance caused the petitioner prejudice. Id. at 687-88. "[U]nsubstantiated and largely conclusory statements" are insufficient to carry a petitioner's burden as to the two prongs of the Strickland test. United States v. Turcotte, 405 F.3d 515, 537 (7th Cir. 2005).

When evaluating counsel's performance under the first prong of Strickland, courts "must be highly deferential." Strickland, 466 U.S. at 689; see Kimmelman v. Morrison, 477 U.S. 365, 381-82 (1986) (discussing the "highly demanding" Strickland standard). To establish constitutionally deficient performance, a petitioner must demonstrate that his lawyer "made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." Strickland, 466 U.S. at 687. Such a showing must go beyond establishing that counsel's performance was below average, since "effective representation is not synonymous with errorless representation." Springer v. Collins, 586 F.2d 329, 332 (4th Cir. 1978); see

Strickland, 466 U.S. at 687.  As it is all too easy to challenge an act, omission, or strategy, once it has proven unsuccessful, "every effort [must] be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time."  Strickland, 466 U.S. at 689.  Courts should therefore "indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance."  Id.

In conducting a hindsight evaluation of counsel's performance, a court must recognize that there "are countless ways to provide effective assistance in any given case" and that "[e]ven the best criminal defense attorneys would not defend a particular client in the same way."  Id.  If defense counsel has made an adequate investigation into the facts and potential lines of defenses, "the strategic choices made as a result will seldom if ever be found wanting."  Id. at 681 (internal quotation marks omitted).  Accordingly, the difficulty in overcoming the general presumption that defense counsel provided effective assistance is even greater where counsel's actions required a strategic "assessment and balancing of perceived benefits against perceived risks" — such strategic decisions must be afforded "'enormous deference.'"  United States v.

Terry, 366 F.3d 312, 317 (4th Cir. 2004) (quoting United States v. Kozinski, 16 F.3d 795, 813 (7th Cir. 1994)).

The second prong of Strickland requires a petitioner to "affirmatively prove prejudice," which requires a showing that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Strickland, 466 U.S. at 693-94. "A reasonable probability is a probability sufficient to undermine confidence in the outcome." Id. at 694. The Court applies a slightly modified prejudice standard when a petitioner alleges ineffective assistance associated with the entry of a guilty plea, requiring the petitioner to demonstrate that "there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." Hill v. Lockhart, 474 U.S. 52, 59 (1985). If the Petitioner fails to prove either of the two prongs of the Strickland test, the Court need not evaluate the other prong of the test. United States v. Roane, 378 F.3d 382, 404 (4th Cir. 2004).

### III. DISCUSSION

Before proceeding to the merits of Petitioner's § 2255 motion, the Court first considers Petitioner's Combined Motions.

### A. Petitioner's Combined Motions

Petitioner seeks leave to supplement Petitioner's reply to the Government's answer to his § 2255 motion and asks the Court to grant summary judgment, or in the alternative, an evidentiary hearing "to present evidence as to Petitioner's claims of ineffective assistance of counsel." Pet'r's Combined Mots. at 1, ECF No. 42. The Court addresses each of Petitioner's requests in turn.

### 1. Request to Supplement Petitioner's Reply

Petitioner seeks to supplement his reply to the Government's opposition to his § 2255 motion, "pursuant to 28 USC §§ 1651, 2242, Clauses 1 & 2 and 2244(d)(1)." Id. The statutes cited by Petitioner, however, do not provide for the relief Petitioner seeks. First, 28 U.S.C. § 2244(d)(1) simply sets forth the one-year statutory deadline for the filing of an application for a writ of habeas corpus, and Petitioner's Combined Motions do not indicate how § 2244(d)(1) authorizes him to supplement his reply. Second, 28 U.S.C. § 1651, also referred to as the All Writs Act, "'empowers a district court to fashion extraordinary remedies when the need arises.'" Scardelletti v. Debarr, 265 F.3d 195, 212 (4th Cir. 2001) (quoting Fla. Med. Assoc. v. U.S. Dep't of Health, Educ., & Welfare, 601 F.2d 199, 202 (5th Cir. 1979)), rev'd on other grounds by Devlin v. Scardelletti, 536 U.S. 1 (2002). "'The All

Writs Act is a residual source of authority to issue writs that are not otherwise covered by statute.'" Clinton v. Goldsmith, 526 U.S. 529, 537 (1999) (quoting Carlisle v. United States, 517 U.S. 416, 429 (1996)). "However, prisoners may not resort to such writs when their challenges would be cognizable under § 2255 or to otherwise circumvent the statutory limits on collateral attacks." Ortiz v. United States, No. 13-6447, 2014 U.S. App. LEXIS 3272, at *2 (4th Cir. Feb. 21, 2014); see Penn. Bureau of Correction v. United States Marshals Serv., 474 U.S. 34, 43 (1985) (holding that "where a statute specifically addresses the particular issue at hand, it is that authority, and not the All Writs Act, that is controlling"). Third, 28 U.S.C. § 2242 provides that an application "for a writ of habeas corpus . . . may be amended or supplemented as provided in the rules of procedure applicable to civil actions." 28 U.S.C. § 2242. However, Petitioner does not cite any "rules of procedure applicable to civil actions" that would permit him to file an additional response to the Government's opposition brief. Id.

Furthermore, even if the Court were to allow Petitioner to supplement his reply, Petitioner fails to set forth any additional facts that would aid the Court in its consideration of his § 2255 motion. Rather, Petitioner asserts new bases for relief, including challenges to the constitutionality of the

12

statutes under which he was convicted, ineffective assistance of counsel for not raising such constitutional challenges, and a claim that he was subjected to double jeopardy by the imposition of allegedly unlawful special assessments. See Pet'r's Combined Mots., ECF No. 42. To the extent that Petitioner asserts new bases for relief, such arguments are rendered moot in light of the Court's determination that Petitioner's claim of actual innocence fails to excuse the procedural default of his constitutional claims. Accordingly, Petitioner's motion seeking leave to supplement his reply is **DENIED**.

### 2. Motion for Summary Judgment/Evidentiary Hearing

Petitioner also requests summary judgment, with respect to his § 2255 motion, pursuant to Federal Rules of Civil Procedure 56 and 60, or in the alternative, an evidentiary hearing "to present evidence as to Petitioner's claims of ineffective assistance of counsel." See Pet'r's Combined Mots. at 1, ECF No. 42.[1]

The relief Petitioner seeks is more appropriately addressed in his § 2255 motion. In any event, Petitioner makes no additional arguments or assertions in his request for summary judgment, but simply requests that "the Writ of Habeas Corpus

---

[1] Federal Rule of Civil Procedure 56 authorizes a court to enter summary judgment where "there is no genuine dispute as to any material fact" and where "the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56. Rule 60 allows a party to seek relief "from a final judgment, order, or proceeding." Fed. R. Civ. P. 60.

Issue." Id. Furthermore, because Petitioner fails to establish his actual innocence, and thereby fails to excuse his procedural default as to his remaining claims, an evidentiary hearing "to present evidence as to Petitioner's claims of ineffective assistance of counsel" is not warranted. Id. Accordingly, Petitioner's motion for summary judgment or, in the alternative, an evidentiary hearing, is **DENIED**. The Court now proceeds to the merits of Petitioner's § 2255 motion.

## B. Petitioner's § 2255 Motion

Petitioner's § 2255 motion advances one claim – his actual innocence "of violating 18 U.S.C. § 1951(a)." Pet'r's Mot. at 5, ECF No. 36. In his supporting brief, Petitioner advances several additional claims of ineffective assistance of counsel, including that his counsel "advis[ed] him to plead guilty to a jurisdictional[ly] defect[ive] indictment," failed to "determine[] whether the government presented adequate evidence of him robbing a citizen[,] amount[ing] to a total effect on Interstate Commerce, and failed to "file an appeal challenging the government subject matter jurisdiction over the alleged crime." Pet'r's Br. at 11-12, ECF No. 37. Petitioner concedes that he "did not appeal or raise [the actual innocence] issue," explaining that his "counsel failed to address this issue to [him]." Pet'r's Mot. at 6, ECF No. 36. However, relying on the United States Supreme Court's opinion in McQuiggin v. Perkins,

14

133 S. Ct. 1924 (2013), Petitioner alleges that his failure to "seek[] federal habeas corpus relief" within "the one year cut off" is excusable because "no reasonable juror would [have] found [him] guilty after hearing new evidence of [his] actual innocence." Pet'r's Br. at 4, ECF No. 37 (citing McQuiggin).

As a preliminary matter, the Court observes that neither the United States Supreme Court nor the Fourth Circuit has recognized "a freestanding actual innocence claim" as an independent ground for habeas relief. McQuiggin, 133 S. Ct. at 1931 (citing Herrera v. Collins, 506 U.S. 390, 400 (1993)); cf. House v. Bell, 547 U.S. 518, 554-55 (2006) (observing that, although the question was "left open in Herrera" whether "freestanding innocence claims are possible," "the threshold for any hypothetical freestanding innocence claim" would be "'extraordinarily high'" (quoting Herrera, 506 U.S. at 417)). This is because actual innocence "is not itself a constitutional claim, but [is] instead a gateway through which a habeas petitioner must pass to have his otherwise barred constitutional claim considered on the merits." Herrera, 506 U.S. at 404. "In other words, although a petitioner claims actual innocence . . ., this innocence claim 'does not by itself provide a basis for relief. Instead, [Petitioner's] claim for relief relies critically on the validity' of his procedurally defaulted claims." Teleguz v. Pearson, 689 F.3d 322, 328 (4th Cir. 2012)

15

(quoting Coleman v. Hardy, 628 F.3d 314, 318 (7th Cir. 2010)). Accordingly, this Court will consider Petitioner's actual innocence claim only as a potential excuse for the procedural default of his constitutional claims. See Buckner v. Polk, 453 F.3d 195, 199 (4th Cir. 2003) (citing Murray v. Carrier, 477 U.S. 478, 496 (1986); Reid v. True, 349 F.3d 788, 806 (4th Cir. 2003)).

## 1. Actual Innocence

Petitioner asserts that he is "actually innocent of violating 18 U.S.C. § 1951(a)," also commonly referred to as the Hobbs Act. Pet'r's Mot. at 5, ECF No. 36.[2] He contends that no "Reasonable Juror would find that a known drug dealer['s] actions . . . [affect] Interstate Commerce." Pet'r's Br. at 6, ECF No. 37. Even assuming that a drug dealer's actions do affect interstate commerce, Petitioner asserts that the victim's statement to police establishes that the victim was not engaged in such activities "at the time of the robbery." Id. Respondent contends that "court records belie [Petitioner's] assertion of actual innocence." Resp't's Br. in Opp'n at 3, ECF No. 40.

---

[2] Petitioner contends in his supporting brief that he is also actually innocent of violating 18 U.S.C. § 924(c)(1)(A). Pet'r's Br. at 5, ECF No. 37. Count Two of the Indictment charged Petitioner with a violation of 18 U.S.C. § 924(c)(1)(A) for using, brandishing, carrying, and possessing a firearm during the violation of 18 U.S.C. § 1951(a) alleged in Count One of the Indictment.

### a. Nexus between Robbery and Interstate Commerce

The Court first considers whether a sufficient connection exists between interstate commerce and Petitioner's robbery of the victim for Hobbs Act jurisdiction.   Petitioner contends that, "in Hobbs Act cases [where] an individual, rather than a business, is the victim" of a robbery, "there must be a 'substantial' connection" between the "interference with interstate commerce" and "the substantive criminal act."   Id. at 6-7 (citing United States v. Wang, 222 F.3d 234, 239 (6th Cir. 2000); United States v. Smith, 182 F.3d 452, 456 (6th Cir. 1999)).   Plaintiff further argues, "[j]ust because there existed a probability that the victim might've been known as a 'known heroin' dealer doesn't satisfy the Jurisdictional nexus between commerce."   Id. at 8.   Respondent contends that "[a]s held by the Fourth Circuit, the robbery of a drug dealer has sufficient effect on interstate commerce to support a Hobbs Act conviction."   Resp't's Br. in Opp'n at 4, ECF No. 40 (citing United States v. Williams, 342 F.3d 350, 352-55 (4th Cir. 2003)).

"The Hobbs Act prohibits robbery or extortion that 'in any way or degree obstructs, delays, or affects commerce or the movement of any article or commodity in commerce.'"   United States v. Tillery, 702 F.3d 170, 174 (4th Cir. 2012) (emphasis added) (quoting 18 U.S.C. § 1951(a)).   Thus, "[a] Hobbs Act

17

violation requires proof of two elements: (1) the underlying robbery or extortion crime, and (2) an effect on interstate commerce." Williams, 342 F.3d at 353. "'[T]he government need not prove a substantial effect [on interstate commerce] in each individual case.'" United States v. Taylor, No. 13-4316, 2014 U.S. App. LEXIS 10559, at *7 (4th Cir. June 6, 2014) (quoting United States v. Powell, 693 F.3d 398, 402 (3d Cir. 2012)). Rather, "the impact on commerce [may be] small, and it may be shown by proof of probabilities without evidence that any particular commercial movements were affected." United States v. Brantley, 777 F.2d 159, 162 (4th Cir. 1985). "Moreover, the government is not required to prove that the 'defendant intended to affect commerce or that the effect on commerce was certain; it is enough that such an effect was the natural, probable consequence of the defendant's actions.'" Taylor, 2014 U.S. App. LEXIS 10559, at *7 (4th Cir. June 6, 2014) (quoting Williams, 342 F.3d at 354).

"To determine whether a robbery affects commerce, we do not simply examine the effect of the individual action in question; it is sufficient that the 'relevant class of acts' has a measureable impact on interstate commerce." Id. at *8 (quoting Tillery, 702 F.3d at 174). "Commerce is sufficiently affected under the Hobbs Act where a robbery depletes the assets of a business that is engaged in interstate commerce." Williams, 342

F.3d at 354-55.   Because dealing in drugs "is an inherently economic enterprise that affects interstate commerce," the robbery of a drug dealer "satisfies the 'affecting commerce' element of the Hobbs Act, inasmuch as such a robbery depletes the business assets of the drug dealer." Id. at 355.   Put another way, "[d]rug dealing is a commercial enterprise and robberies of drug dealers threaten that enterprise; that is enough for a federal court to exercise jurisdiction under the Hobbs Act." Taylor, 2014 U.S. App. LEXIS 10559, at *11 (citing Williams, 342 F.3d at 354).

Here, Petitioner admitted in the Statement of Facts that his victim "was a known heroin trafficker in the City of Newport News, Virginia."   Statement of Facts at 1, ECF No. 18. Petitioner admits that he pointed a revolver at the victim, demanding to know "where the drugs at?" Id.   When the victim told Petitioner the "drugs took off running," Petitioner asked the victim, "where your money at?" and took "approximately $100.00" from the victim before "depart[ing] in his maroon SUV." Id.   Under well-established Fourth Circuit law, the Statement of Facts sufficiently establishes that Petitioner robbed a drug dealer, which "is enough for a federal court to exercise jurisdiction under the Hobbs Act." Taylor, 2014 U.S. App. LEXIS 10559, at *11 (citing Williams, 342 F.3d at 354).

Petitioner also argues that the "victim wasn't a business which Commerce could regulate" and contends that "a probability that the victim might've been known as a 'known heroin' dealer doesn't satisfy the Jurisdictional nexus between commerce" and the robbery. Pet'r's Br. at 8, ECF No. 37. The Court addresses these arguments in turn.

First, "[i]t is of no relevance that the market for a certain commodity may be illegal. The jurisdictional predicate in the Hobbs Act speaks of 'commerce,' not just 'legal' or 'legitimate' commerce, and commerce is well understood to encompass unlawful transactions." Taylor, 2014 U.S. App. LEXIS 10559, at *11 (citing Gonzalez v. Raich, 545 U.S. 1, 18-19 (2005)). Indeed, just as "the wheat market is a lawful market that Congress sought to protect and stabilize, . . . the [heroin] market is an unlawful market that Congress sought to eradicate." Raich, 545 U.S. at 19 n.29. "It has long been settled that Congress' power to regulate commerce includes the power to prohibit commerce in a particular commodity." Id. Thus, a known heroin dealer's business was one "which Commerce could regulate." Pet'r's Br. at 8, ECF No. 37.

Second, it is well-established in the Fourth Circuit that "the impact on commerce . . . may be shown by proof of probabilities." Brantley, 777 F.2d at 162. To be sure, "it is enough that such an effect [on interstate commerce] was the

20

natural, probable consequence of the defendant's actions.'" Taylor, 2014 U.S. App. LEXIS 10559, at *7 (quoting Williams, 342 F.3d at 354). Although "evidence of the defendant's intent is not required to prove that his robberies had an impact on interstate commerce, that intent is still probative on the question of whether his actions would have had the 'natural consequence[]' of affecting such commerce." Id. (citing Powell, 693 F.3d at 405).

Petitioner admitted in his Statement of Facts that the victim "was a known heroin trafficker in the City of Newport News, Virginia, and was known to [Petitioner] to be a narcotics trafficker." Statement of Facts ¶ 1, ECF No. 18. Petitioner's admission that he pointed a revolver at the victim, who he knew to be a narcotics trafficker, and demanded to know "where the drugs at," Statement of Facts ¶ 3, ECF No. 18, indicates that the "natural, probable consequence of [Petitioner's] actions" was that Petitioner would obtain drugs from the drug dealer. Williams, 342 F.3d at 354. Thus, the "probability" that the victim was a heroin dealer, bolstered by Petitioner's admission that the victim "was known to [Petitioner] to be a narcotics trafficker," Statement of Facts at 1, ECF No. 18, is sufficient to establish an impact on interstate commerce. Accordingly, the Court rejects Plaintiff's arguments that the Government failed

to establish a jurisdictional nexus between interstate commerce and the robbery of the known heroin dealer.

### b. Contemporaneity of Robbery and Interstate Commerce

The Court next considers Petitioner's argument that federal subject matter jurisdiction is lacking because the victim's statement to police - that he had not been selling drugs at the time of the robbery - suggested that "the victim activity at the time was nothing within the realm of interstate commerce." Pet'r's Br. at 10, ECF No. 37. In other words, Petitioner appears to argue that, because the victim claimed that he was not engaged in dealing drugs at the exact time of the robbery, Petitioner's actions violated state law, rather than federal law.

The Fourth Circuit recently addressed this issue, holding that "a defendant who robs a victim in the belief that he will recover the proceeds of an enterprise engaged in interstate commerce will not fortuitously escape prosecution under the Hobbs Act because his target did not possess those proceeds at the precise time of the robbery." Taylor, 2014 U.S. App. LEXIS 10559, at *18 (citing Brantley, 777 F.2d at 162 ("It may be enough [to prove the jurisdictional predicate] that the parties intended to complete a transaction which would have affected commerce, though their intention was frustrated.")).

Here, the Statement of Facts makes clear that the victim was "doubtless targeted by [Petitioner] in the hope [the victim] would be found at a flush moment." Id. Petitioner's admitted intent to rob a known narcotics trafficker, combined with his admission that he pointed a revolver at the victim and demanded to know "where the drugs at," Statement of Facts ¶ 3, ECF No. 18, establishes "that the defendant intentionally targeted a business engaged in interstate commerce." Id. at *17 (citing Powell, 693 F.3d at 405). That the "drugs took off running," Statement of Facts at 1, ECF No. 18, "does nothing to vitiate [Petitioner's] intent to target an enterprise which by its nature engages in interstate commercial activity," Taylor, 2014 U.S. App. LEXIS, at *18. Indeed, it is clear from Petitioner's own admissions that he "intended to complete a transaction which would have affected commerce, though [his] intention was frustrated." Brantley, 777 F.2d at 162. Thus, the Court rejects Petitioner's argument that he is actually innocent because the victim was not dealing drugs "at the time of the robbery." Pet'r's Br. at 6, ECF No. 37. Accordingly, because Petitioner cannot prove his actual innocence to excuse his procedural default, Petitioner's § 2255 motion is **DENIED**.

## 2. Ineffective Assistance of Counsel

Even if the Court were to consider Petitioner's procedurally defaulted claims of ineffective assistance of

counsel, Petitioner's failure to prove his actual innocence of violating the Hobbs Act necessarily renders his related claims of ineffective assistance of counsel meritless. Petitioner claims that his counsel (1) "advis[ed] him to plead guilty to a jurisdictional[ly] defect[ive] indictment," (2) failed to "determine[] whether the government presented adequate evidence of him robbing a citizen[,] amount[ing] to a total effect on Interstate Commerce," and (3) failed to "file an appeal challenging the government subject matter jurisdiction over the alleged crime." Pet'r's Br. at 11-12, ECF No. 37. The Court addresses Petitioner's arguments in turn.

First, the Indictment in this case was not "jurisdictional[ly] defect[ive]" and Petitioner's counsel was not ineffective for advising him to plead guilty. Id. Count One of the Indictment, citing 18 U.S.C. § 1951(a), asserted that Petitioner "did unlawfully attempt to take and obtain narcotics from the person of a narcotics trafficker known to the Grand Jury, against his will." Indictment at 2, ECF No. 1. The Indictment also asserted that "[d]rug trafficking is an inherently economic enterprise that affects interstate commerce." Id. Thus, the Indictment was sufficient to "apprise the accused of the charge or charges against him." United States v. Fogel, 901 F.2d 23, 25 (4th Cir. 1990). Specifically, the Indictment put Petitioner on notice that the Government

24

intended to prove both elements of a "Hobbs Act violation . . .,
(1) the underlying robbery or extortion crime, and (2) an effect
on   interstate   commerce."   <u>Williams</u>,   342   F.3d   at   353.
Furthermore, as discussed above, the Statement of Facts, which
Petitioner agreed "is true and accurate," Statement of Facts at
4, ECF No. 18, clearly establishes Petitioner's guilt of the
crime charged in Count One of the Indictment.   Thus, Petitioner
fails to demonstrate either that his counsel's performance "fell
below an objective standard of reasonableness," <u>Strickland</u>, 466
U.S. at 669-70, or that, "but for counsel's errors, he would not
have pleaded guilty and would have insisted on going to trial,"
<u>Lockhart</u>, 474 U.S. at 59.

Second, the record does not show that counsel failed to
"determine[] whether the government presented adequate evidence
of him robbing a citizen[,] amount[ing] to a total effect on
Interstate Commerce."   Pet'r's Br. at 11-12, ECF No. 37.   To the
contrary, it appears that counsel wisely determined that
Petitioner had, in fact, violated the Hobbs Act, and prudently
advised Petitioner to plead guilty, so that he could at least
reap the sentencing benefit of accepting responsibility for his
conduct.   Accordingly, Petitioner fails to demonstrate either
deficient performance by his counsel or any resulting prejudice.

Third, Petitioner's counsel was not ineffective for not
"fil[ing] an appeal challenging the government subject matter

jurisdiction over the alleged crime." Id. Petitioner asserts in his brief that his "counsel was informed to file an appeal challenging the government subject matter jurisdiction . . . based upon the fact that after the petitioner in this matter was sentence[d] . . . he was informed by another inmate . . . that his lawyer was required to and/or should've forced the government to establish and/or present evidence of an actual effect on Interstate Commerce before advising him to plea[d] guilty." Pet'r's Br. at 12, ECF No. 37. It is unclear whether Petitioner "unequivocally instructed" his counsel to file an appeal, United States v. Poindexter, 492 F.3d 263, 271 (4th Cir. 2007), as Petitioner's assertion, that his "counsel was informed to file an appeal," Pet'r's Br. at 12, ECF No. 37 (emphasis added), could be interpreted in two ways, either that Petitioner instructed counsel to file an appeal or that counsel possessed the information necessary to understand that he should file an appeal. Petitioner's § 2255 motion, however, disavows the first interpretation, alleging that the reason Petitioner did not appeal his conviction was not that his counsel failed to follow Petitioner's instruction to appeal, but that his "counsel failed to address [the actual innocence] issue to [him]." Pet'r's Mot. at 6, ECF No. 36.

In any event, because Petitioner's ineffective assistance of counsel claims are procedurally defaulted, the Court need not

further interpret Petitioner's motion to determine whether counsel was "unequivocally instructed" to file an appeal, especially in light of the fact that any such appeal would have been frivolous. See Bell v. Jarvis, 236 F.3d 149, 164 (4th Cir. 2000) (observing that "[c]ounsel is not obligated to assert all nonfrivolous issues on appeal"). The jurisdictional nexus between the robbery and interstate commerce was clearly established by Petitioner's own admissions. As Judge Easterbrook once observed, an "admission is even better than a jury's finding beyond a reasonable doubt; it removes all contest from the case." United States v. Warneke, 310 F.3d 542, 550 (7th Cir. 2002) (citing United States v. Broce, 488 U.S. 563, 570 (1989)). Thus, even if Petitioner had raised his claims of ineffective assistance of counsel in a timely manner, Petitioner fails to demonstrate either deficient performance by his counsel or prejudice resulting from such alleged deficiencies.

## IV. CONCLUSION

For the reasons discussed above, Petitioner's Combined Motions, seeking leave to supplement his reply to the Government's opposition and requesting summary judgment or, in the alternative, an evidentiary hearing, are **DENIED**. Petitioner's § 2255 Motion is also **DENIED**, because Petitioner's actual innocence claim fails to excuse his procedural default

regarding his ineffective assistance of counsel claims, which are, in any event, meritless.

Finding that Petitioner has not made a "substantial showing of the denial of a constitutional right," a certificate of appealability as to Petitioner's § 2255 motion is also **DENIED**. R. Governing § 2255 Proceedings in U.S. Dist. Cts. 11(a); 28 U.S.C. § 2253(c)(2); see Miller-El v. Cockrell, 537 U.S. 322, 336-38 (2003).

Petitioner is **ADVISED** that, because a certificate of appealability is denied by this Court, he may seek a certificate from the United States Court of Appeals for the Fourth Circuit. R. Gov. § 2255 Proceedings for U.S. Dist. Cts. 11(a).   If Petitioner intends to seek a certificate of appealability from the Court of Appeals, he must forward a written notice of appeal to the Clerk of the United States District Court, United States Courthouse, 600 Granby Street, Norfolk, Virginia, 23510, within sixty (60) days from the date of this Order.

The Clerk is **DIRECTED** to forward a copy of this Opinion and Order to Petitioner and the United States Attorney's Office in Newport News, Virginia.

**IT IS SO ORDERED.**

_____ /s/ Ⓜ︎&ᴊ

Mark S. Davis
UNITED STATES DISTRICT JUDGE

Norfolk, Virginia
June 30 , 2014